UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>

OPENGOV, INC.,

               Plaintiff,

       v.

GTY TECHNOLOGY HOLDINGS INC., et al.,

               Defendants.

</td><td>

Case No. 18-cv-07198-JSC


**DEFENDANTS' MOTION TO TRANSFER, OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS; PLAINTIFF'S MOTION TO REMAND; DEFENDANTS GTY TECHNOLOGY MERGER SUB, INC. AND GTY INVESTORS, LLC'S MOTION TO DISMISS**

Re: Dkt. Nos. 8, 22, 24

</td></tr>
</table>

Plaintiff OpenGov, Inc. ("OpenGov") sued Defendants GTY Technology Holdings Inc. ("GTY Holdings"), GTY Govtech, Inc. ("New GTY"), GTY Technology Merger Sub, Inc. ("Merger Sub"), GTY Investors, LLC ("GTY Investors"), Harry L. You, and Stephen J. Rohleder (collectively, "Defendants") in Superior Court of the State of California in and for the County of San Mateo, alleging four causes of action related to alleged misuse of Plaintiff's proprietary information.  (Dkt. No. 11-1, Ex. 1.)[1]  Defendants timely removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]  (Dkt. Nos. 1 & 11.)  Now pending before the Court are Defendants' motion to transfer venue to the Southern District of New York, or in the alternative, to stay proceedings, (Dkt. No. 8); Plaintiff's motion to remand, (Dkt. No. 22); and Defendants Merger Sub and GTY Investor's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 24).  After careful consideration of the parties'

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 20 & 21.)

1  briefing, and having had the benefit of oral argument on February 28, 2019, the Court GRANTS

2  Plaintiff's motion to remand because complete diversity between the parties is lacking.

3  Accordingly, the Court DISMISSES as moot Defendants' motion to transfer and Defendants

4  Merger Sub and GTY Investor's motion to dismiss.

5                                        **BACKGROUND**

6  **I.      The Parties**

7          **A.      OpenGov**

8          Plaintiff OpenGov is a Delaware corporation with its principal place of business and

9  headquarters in California.  (Dkt. No. 23-6 at ¶ 2.)  The company was founded in 2012 and

10  produces "cloud-based public sector software" that provides "budgeting, operational performance,

11  and citizen engagement software to more than 2,000 public sector agencies nationwide."  (Dkt.

12  No. 11-1 at ¶¶ 2, 28.)  Plaintiff's customers include municipalities, "school districts, and other

13  public sector organizations."  (*Id.* at ¶ 2.)

14          **B.      GTY Holdings**

15          Defendant "GTY Holdings is a foreign company organized under the laws of the Cayman

16  Islands with its principal place of business" in Nevada.  (Dkt. No. 11 at ¶ 11.)  The company was

17  formed in 2016 as a special purpose acquisition company ("SPAC") to "effectuat[e] one or more

18  business combinations in the technology industry."  (Dkt. No. 8-1 at ¶¶ 2-3.)  In October 2016, the

19  company completed an initial public offering ("IPO") that "generated more than $550 million."

20  (*Id.* at ¶ 4.)  As part of the IPO, "GTY Holdings committed to return that cash to its public

21  shareholders if it did not consummate a business combination within 24 months."  (Dkt. No. 8-3,

22  Ex. 1 at 2-3.)  In September 2018, GTY Holdings announced that it had entered into a business

23  combination consisting of agreements to acquire six companies for $497 million.  (*See generally*

24  Dkt. No. 8-7, Ex. 5.)  According to the terms of the agreements, the business combination is

25  intended to close by March 31, 2019.[3]  (*Id.* at 5-10.)

26

27  ───────────────
[3] Plaintiff's complaint alleges that "[i]n October 2018, GTY Holdings' shareholders approved an
28  extension to this deadline, giving GTY Holdings until May 1, 2019 to complete its initial business
combination."  (Dkt. No. 11-1 at ¶ 34.)

2

**C.    New GTY**

Defendant New GTY is a Massachusetts corporation with its principal place of business in Nevada.  (Dkt. No. 11 at ¶ 13.)  The company was formed out of the business combination discussed above, with GTY Holdings and the six target companies becoming "direct or indirect wholly-owned subsidiaries of New GTY."  (Dkt. No. 8-7, Ex. 5 at 3.)

**D.    Merger Sub**

Defendant Merger Sub is a Delaware corporation with its principal place of business in Nevada.  (Dkt. No. 11-1 at ¶ 19.)  The company was formed in August 2018 to effectuate the business combination discussed above.  (Dkt. No. 11 at ¶¶ 5, 25.)  Upon closing of the business combination, Merger Sub "will merge with and into" GTY Holdings, with the latter surviving "as a direct, wholly-owned subsidiary of New GTY."  (Dkt. No. 8-7, Ex. 5 at 3.)

**E.    GTY Investors**

Defendant GTY Investors is a Delaware limited liability company ("LLC") with its principal place of business in Nevada.  (Dkt. No. 11 at ¶ 23.)  The LLC's members are citizens of "California, Hawaii, Maryland, Massachusetts, Nebraska, Nevada, New Hampshire, New Jersey, New York, and Texas."  (*Id.*)  GTY Investors was the "sponsor" or "promoter" of the GTY Holdings IPO.  (Dkt. No. 8-4, Ex. 2 at 5 (GTY Holdings' October 2016 prospectus defining "sponsor" as "GTY Investors, LLC, . . . which is controlled by our founders."); *see also* Dkt. No. 11-1 at ¶ 33 (alleging that GTY Investors was "established . . . to act as the promoter (sometimes referred to as the 'sponsor') of GTY Holdings.").)  The company holds an ownership interest in GTY Holdings.  (Dkt. No. 26 at 6.)

**F.    Harry L. You and Stephen J. Rohleder**

Defendant Harry L. You is the "President, Chief Financial Officer and Director of GTY [Holdings]."  (Dkt. No. 8-1 at ¶ 1.)  Mr. You is also a member and manager of GTY Investors and as such, holds a "promotional interest in GTY Holdings."  (Dkt. No. 11-1 at ¶ 33; *see also* Dkt. No. 26 at 14.)    Mr. You is a citizen of New Hampshire.  (Dkt. No. 11 at ¶ 15.)

Defendant Stephen J. Rohleder is "member of GTY Holdings' leadership team."  (Dkt. No. 8-3, Ex. 1 at ¶ 15.)  Mr. Rohleder is a citizen of Texas.  (Dkt. No. 11 at ¶ 17.)

3

## II. Complaint Allegations

The gravamen of the complaint is that Defendants misappropriated Plaintiff's "proprietary, confidential and trade secret information." (*See* Dkt. No. 11-1 at ¶ 1.)

Plaintiff produces cloud-based public sector software, and as part of Plaintiff's business strategy it "has been executing a proprietary, confidential 'platform rollup acquisition strategy,' targeting for acquisition specific companies having particular attributes and products that, when integrated," would enhance Plaintiff's position in the "cloud-based public sector software solutions market." (*Id.* at ¶ 2.) In April 2017, Mr. You "proposed a transaction whereby GTY Holdings would use its $550 million SPAC Trust Account to acquire OpenGov and to finance the acquisition of one or more complimentary companies." (*Id.* at ¶ 4.) Defendants specifically "represented that GTY Holdings would acquire OpenGov for $225-$250 million in cash and stock and combine it with OpenGov's roll-up acquisition targets to create a vertically-integrated, public sector software business combination worth more than $1 billion." (*Id.* at ¶ 9.) OpenGov's chief executive officer ("CEO") Zachary Bookman would "become CEO of the combined company, and two of OpenGov's directors were to sit on its board." (*Id.*)

On May 9, 2017, Plaintiff and GTY Holdings entered into a non-disclosure agreement ("the Agreement") to advance the transaction discussions by providing GTY Holdings with proprietary and confidential information regarding Plaintiff's "insights, market intelligence, and cloud/software-as-a-service (SaaS) platform expertise." (*Id.* at ¶¶ 5-6.) Pursuant to the Agreement, GTY Holdings "promised to keep OpenGov's confidential information 'strictly confidential,' and further agreed that such information could only be used by the GTY Defendants for a transaction that included OpenGov." (*Id.* at ¶ 6.) The Agreement specified "that Confidential Information included 'the identities of any parties involved in such a possible transaction, and all other information provided in connection therewith.'" (*Id.*) The Agreement was signed by Plaintiff and Mr. You as "President & CFO" of GTY Holdings. (Dkt. No. 11-1, Ex. A at 34-38.)

After executing the Agreement, Plaintiff disclosed to Defendants "the details of OpenGov's platform roll-up acquisition strategy, including the identities and attributes of the

4

specific acquisition targets that OpenGov had selected." (Dkt. No. 11-1 at ¶ 7.) Plaintiff also "arranged calls and meetings between the acquisition targets" and Defendants, "and brokered negotiations between those companies and . . . Defendants about the terms of a combination with OpenGov through a merger and acquisition using the GTY Holdings SPAC." (*Id.*) Mr. You told the "acquisition targets that they would be partners with OpenGov in the contemplated transaction." (*Id.* at ¶ 9.)

In July 2018, "after months of acquiring OpenGov's trade secrets and collaborating with OpenGov to execute OpenGov's platform roll-up acquisition strategy, and in the midst of negotiating the terms of a final letter of intent," Mr. You told Plaintiff that "Defendants did not intend to pursue the transaction." (*Id.* at ¶ 10.) Defendants then issued a press release on September 12, 2018 "announcing that GTY Holdings had entered into definitive agreements to acquire for $497 million six companies to 'create the leading North American Saas/Cloud software company focused on the public sector.'" (*Id.* at ¶ 11.) The six companies consisted entirely of "roll-up acquisition target[s]" that had been previously selected by Plaintiffs and identified to Defendants, and "actively courted for a combination with OpenGov." (*Id.*) Defendants' press release "claimed that, '[a]fter an extensive search process, the [GTY] sponsors elected to bring together the best-in-class companies to establish an integrated software solution in the highly fragmented and underpenetrated public sector market.'" (*Id.* at ¶ 12 (alterations in original).) Defendants "intend to complete their business combination by May 1, 2019." (*Id.* at ¶ 14.)

Plaintiff alleges that the announced transaction reflects Defendants' seizure of Plaintiff's "platform roll-up acquisition strategy" through the misuse of Plaintiff's confidential and proprietary information, which was disclosed to Defendants pursuant to the Agreement. (*Id.* at ¶¶ 13-14.) Plaintiff's complaint seeks:

> preliminary and permanent injunctive, for a constructive trust over OpenGov's interest in New GTY and GTY Merger Sub—the entities that . . . Defendants created to combine OpenGov's platform roll-up acquisition targets into a new company—for the disgorgement of . . . Defendants' ill-gotten profits and unjust enrichment, and for compensatory and punitive damages.

5

1  (*Id.* at ¶ 15.)

2  **III.    Other Litigation**

3          On November 19, 2018, GTY Holdings, New GTY, Mr. Rohleder, and Mr. You filed an

4  action against OpenGov in the United States District Court for the Southern District of New York.

5  *See* Complaint, *GTY Tech. Holdings Inc., et al. v. OpenGov, Inc.*, Case No. 1:18-cv-10854

6  (S.D.N.Y. Nov. 19, 2018), Dkt. No. 1.  The complaint seeks declaratory relief; specifically,

7  "declarations that a certain confidentiality agreement between GTY Holdings and OpenGov has

8  not been breached, that certain information is not confidential, proprietary and/or trade secret

9  information of OpenGov, and that there is no enforceable agreement between GTY Holdings and

10  OpenGov related to an acquisition of OpenGov by GTY Holdings."  (Dkt. No. 11 at 2 n.1; *see*

11  *also* Complaint, *GTY Tech. Holdings Inc.*, Case No. 1:18-cv-10854 (S.D.N.Y. Nov. 19, 2018),

12  Dkt. No. 1 at ¶¶ 32-43.)  Pending before the court in that action are OpenGov's motion to dismiss

13  the complaint, or in the alternative stay proceedings pending this Court's resolution of the instant

14  action.  *See* OpenGov Inc.'s Mot. To Dismiss, *GTY Tech. Holdings Inc.*, S.D.N.Y. Case No. 1:18-

15  cv-10854 (S.D.N.Y. Dec. 11, 2018), Dkt. No. 15.  Also pending is the plaintiffs' "cross-motion to

16  enjoin the prosecution" of the instant action in this Court.  *See id.*, Dkt. No. 25 at 1.

17  **IV.    Procedural History**

18          Plaintiff filed its complaint in state court on November 20, 2018, bringing causes of action

19  for: (1) breach of contract (against GTY Holdings); (2) inducing breach of contract (against New

20  GTY, Merger Sub, GTY Investors, Mr. You, and Mr. Rohleder); (3) fraud (against all

21  Defendants); and (4) trade secret misappropriation (against all Defendants).  (Dkt. No. 11-1 at ¶¶

22  75-104.)  Defendants removed the action to this Court eight days later.  On December 1, 2018,

23  Defendants filed an amended notice of removal to "correct[ ] minor nomenclature errors" in the

24  earlier notice of removal.  (Dkt. No. 11 at 2.)  On December 11, 2018, the Court granted the

25  parties' stipulated briefing schedule for the instant motions.  (Dkt. No. 18.)  The motions are fully

26  briefed, and the Court heard oral argument on February 28, 2019.

27  //

28  //

**DISCUSSION**

**I.      Which Motion to Decide First?**

Defendants insist that the Court should first consider (and grant) their pending motion to transfer (Dkt. No. 8) and thus presumably have the New York federal court decide whether the federal courts have subject matter jurisdiction.  The Court disagrees.  First, subject matter jurisdiction must be established as a threshold matter.  *See Bookout v. Beck*, 354 F.2d 823, 825 (9th Cir. 1965) ("jurisdiction must be first found over the subject matter . . . before one reaches venue").  Second, even if the Court had discretion to transfer this action to New York pursuant to the first-to-file rule before deciding subject matter jurisdiction, there is no good reason to do so. The purpose behind the "first-to-file" rule is to promote efficiency.  *See Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).  There is nothing efficient about Defendants' proposal: transferring a fully briefed remand motion to the New York court for that court to decide whether Plaintiff's California state law claims against the non-diverse defendants defeat jurisdiction, and then, if the court finds it lacks jurisdiction, transferring the case back to this Court to then remand to the San Mateo Superior Court.[4]  This Court will decide subject matter jurisdiction.

**II.      Motion to Remand**

Plaintiff moves to remand this action on the grounds that the Court lacks subject matter jurisdiction because complete diversity of citizenship between the parties is lacking.  Defendants counter that this action was properly removed because Plaintiff fraudulently joined GTY Investors and Merger Sub; thus, the citizenship of those defendants should be ignored for purposes of diversity.

**A.      Diversity Jurisdiction and Removal Generally**

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

---

[4] At oral argument the Court noted that it was not aware of any case in which a federal district court remanded a case to a state court outside the state in which the district court sits.  Defendants suggested that if the New York court finds it lacks subject matter jurisdiction, it could transfer the case back to this Court for remand to the San Mateo Superior Court.

7

1    (1987). Federal district courts have original subject matter jurisdiction over cases in which there is

2    both complete diversity of citizenship between the parties and an amount in controversy exceeding

3    $75,000. 28 U.S.C. § 1332(a)(1). Complete diversity means that "each defendant must be a

4    citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d

5    1223, 1234 (9th Cir. 2008). For purposes of diversity jurisdiction, "a corporation shall be deemed

6    to be a citizen of every State and foreign state by which it has been incorporated and of the State

7    or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). And "an

8    LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia*

9    *Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

10        A defendant seeking removal to federal court "bears the burden of establishing that

11   removal is proper," and the "removal statute is strictly construed against removal jurisdiction."

12   *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).

13   "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first

14   instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992); *see also* 28 U.S.C. § 1447(c) ("If at

15   any time before final judgment it appears that the district court lacks subject matter jurisdiction,

16   the case shall be remanded.").

17       **B.      Complete Diversity is Lacking**

18       It is undisputed that Plaintiff is a citizen of both Delaware (its place of incorporation) and

19   California (its principal place of business). It is likewise undisputed that Merger Sub is a citizen

20   of Delaware (its place of incorporation), and GTY Investors is a citizen of California (the state in

21   which one of its members is a citizen). Thus, it is undisputed that Plaintiff shares citizenship with

22   GTY Investors and Merger Sub.

23       This does not end the inquiry, however. "In determining whether there is complete

24   diversity, district courts may disregard the citizenship of a non-diverse defendant who has been

25   fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir.

26   2018). Defendants insist that GTY Investors and Merger Sub were fraudulently joined because

27   they "were not involved in any of the conduct underlying OpenGov's claims and therefore

28   OpenGov could not possibly state a claim against those defendants." (Dkt. No. 26 at 12 n.6.)

1    Further, Defendants argue that the complaint lacks any "substantive allegations of wrongdoing"

2    against GTY Investors and Merger Sub.  (*Id.*)

3                    **1.      Fraudulent Joinder**

4            "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder

5    bears a heavy burden since there is a general presumption against [finding] fraudulent joinder."

6    *Grancare*, 889 F.3d at 548 (alteration in original) (internal quotation marks and citation omitted).

7    The Ninth Circuit recognizes "two ways to establish fraudulent joinder: (1) actual fraud in the

8    pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against

9    the non-diverse party in state court."  *Id.* (internal quotation marks and citation omitted).  To

10   establish fraudulent joinder the second way, the defendant must "show that the individuals joined

11   in the action cannot be liable on any theory."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318

12   (9th Cir. 1998).  "But if there is a *possibility* that a state court would find that the complaint states

13   a cause of action against any of the resident defendants, the federal court must find that the joinder

14   was proper and remand the case to the state court."  *Grancare*, 889 F.3d at 548 (internal quotation

15   marks and citation omitted).

16          The standard for determining fraudulent joinder is not equivalent to a Rule 12(b)(6)

17   standard.  *See id.* at 549 (noting that "[a] standard that equates fraudulent joinder with Rule

18   12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.").  Instead, "a federal

19   court must find that a defendant was properly joined and remand the case to state court if there is a

20   *possibility* that a state court would find that the complaint states a cause of action against any of

21   the [non-diverse] defendants."  *Id.* (alteration in original) (internal quotation marks and citation

22   omitted).  The "no possibility" standard is "similar to the 'wholly insubstantial and frivolous'

23   standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction[,]" and

24   "[t]he relative stringency of the standard accords with the presumption against removal

25   jurisdiction, under which we 'strictly construe the removal statute,' and reject federal jurisdiction

26   'if there is any doubt as to the right of removal in the first instance.'"  *Id.* at 549-50 (quoting *Gaus*,

27   980 F.2d at 566).  If a federal court determines that a deficiency in the complaint regarding

28   allegations against a non-diverse defendant could "*possibly* be cured by granting the plaintiff leave

9

1    to amend," it must remand the case to state court.  *See id.* at 550 (emphasis added).

2          "The defendant seeking removal is entitled to present the facts showing that the joinder is

3    fraudulent."  *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Morris*

4    *v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) ("[F]raudulent joinder claims may

5    be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as

6    affidavits and deposition testimony.") (internal quotation marks and citation omitted).  In many

7    cases, however, "the complaint will be the most helpful guide in determining whether a defendant

8    has been fraudulently joined."  *Grancare*, 889 F.3d at 549.  The Court must thus determine

9    whether Defendants have shown that Plaintiff could not possibly state a claim for relief against the

10   non-diverse defendants.  If Plaintiff can state a claim against at least one non-diverse defendant,

11   diversity is destroyed and the case must be remanded.

12                         **2.      GTY Investors**

13         The complaint brings claims against GTY Investors for: (1) inducing breach of contract

14   (against New GTY, Merger Sub, GTY Investors, Mr. You, and Mr. Rohleder); (2) fraud (against

15   all Defendants); and (3) trade secret misappropriation (against all Defendants).  (Dkt. No. 11-1 at

16   ¶¶ 81-104.)  Defendants argue that "GTY Investors were not involved in any of the conduct

17   underlying" those claims; thus, Plaintiff "could not possibly state a claim" against them.  (Dkt. No.

18   26 at 12 n.6.)  The Court disagrees, and concludes that Defendants fail to carry their heavy burden

19   of showing that there is not at least a possibility of recovery against GTY Investors.

20         Plaintiff alleges that Mr. You and two other individuals "established GTY Investors to act

21   as the promoter (sometimes referred to as the 'sponsor') of GTY Holdings."  (Dkt. No. 11-1 at ¶

22   33.)  The record supports that allegation.  (*See* Dkt. No. 8-4, Ex. 2 at 5 (GTY Holdings' October

23   2016 prospectus defining "sponsor" as "GTY Investors, LLC, . . . which is controlled by our

24   founders.").)  Plaintiff further alleges that Mr. You is a member and manager of GTY Investors,

25   and as such, holds a "promotional interest in GTY Holdings."  (Dkt. No. 11-1 at ¶ 33.)  According

26   to the complaint, GTY Investors "hold[s] an approximately seventeen percent promotional interest

27   in GTY Holdings."  (*Id.*)  The complaint further alleges, in pertinent part:

28                     After  entering  into  the  Confidentiality  Agreement,  OpenGov

United States District Court
Northern District of California

1

2

3

4

> disclosed its confidential and trade secret information to the GTY
> Defendants, and briefed Defendant You, his co-promoters [in GTY
> Investors] William Green and Joseph Tucci, and GTY Holdings'
> Director Defendant Rohleder on the details of OpenGov's platform
> roll-up acquisition strategy, including the identities and attributes of
> the specific acquisition targets that OpenGov had selected from
> among the hundreds of companies offering software for the public
> sector.

5   (Dkt. No. 11-1 at ¶ 7.)  Thus, GTY Investors allegedly had knowledge of the Agreement and

6   details of the potential transaction between Plaintiff and GTY Holdings.

7           The overarching narrative of the complaint is that *all* Defendants, including GTY

8   Investors, were driven to engage in the underlying conduct by the two-year deadline under which

9   GTY Holdings was working to complete its first business combination.  Other evidence of record

10  supports that narrative.  GTY Holdings' prospectus states, in pertinent part:

11

12

13

14

> ***Since our sponsor* [GTY Investors]*, executive officers and directors
> will lose their entire investment in us if our initial business
> combination is not completed*** (other than with respect to public
> shares they may acquire during or after this offering), a conflict of
> interest may arise in determining whether a particular business
> combination target is appropriate for our initial business combination.

15  (Dkt. No. 8-4, Ex. 2 at 49 (emphasis added).)  Defendants acknowledge that GTY Investors

16  "served as GTY Holdings' 'promoter' or 'sponsor,'" and "continues to hold . . . an interest in GTY

17  Holdings."  (Dkt. No. 26 at 6.)  Likewise, Defendants acknowledge that Mr. You is "a member

18  and manager of GTY Investors."  (*Id.* at 14 (internal quotation marks omitted).)  The record thus

19  reflects GTY Investors' monetary interest in the success of GTY Holdings, its knowledge of the

20  Agreement, and the interrelatedness of Mr. You, GTY Investors, and GTY Holdings.

21          Given the record discussed above, the Court cannot conclude that the claims against GTY

22  Investors are "wholly insubstantial and frivolous," or that any deficiencies regarding the

23  allegations against it could not possibly be cured with leave to amend.  Indeed, Plaintiff's motion

24  for remand specifies its theory of liability against all Defendants perhaps more succinctly than

25  alleged in the complaint.  (*See* Dkt. No. 22 at 7 ("This time pressure is what drove GTY to engage

26  in the misconduct that is the gravamen of this case and the California action: unable to find a

27  promising business combination of its own in time, GTY defrauded OpenGov, breached the

28  Confidentiality Agreement, falsely traded on OpenGov's name and reputation, and stole

1   OpenGov's trade secrets, including its proprietary combination of platform roll-up candidates.")

2   (citing the entire complaint ("¶¶ 1-104")).)  Plaintiff's motion further alleges that "[u]nless

3   extended by agreement of the shareholders, GTY had two years to consummate a transaction, or

4   the money invested would have to be returned to the shareholders, and GTY Investors would lose

5   its promotional interest and its substantial expenditures incurred to take GTY Holdings public."

6   (*Id.*)

7           Plaintiff's claim for inducing breach of contract alleges that GTY Investors, with

8   knowledge of the Agreement, has "intentionally caused, and knowingly continue[s] to cause, GTY

9   Holdings to breach the . . . Agreement with OpenGov by misusing OpenGov's confidential,

10  proprietary, and trade secret information in violation of that Agreement."  (Dkt. No. 11-1 at ¶ 84.)

11  The record suggests that it is at least possible that GTY Investors exerted a degree of direction or

12  control over GTY Holdings in its dealings with Plaintiff—especially given Mr. You's role in both

13  entities.  Defendants have not shown that Plaintiff cannot possibly succeed on this claim against

14  GTY Investors, either legally or factually.  For this reason alone, the motion to remand must be

15  granted.

16          Defendants also have not shown that Plaintiff cannot possibly state a misappropriation of

17  trade secrets claim against GTY Investors for the same reason.  Indeed, the complaint alleges that

18  Defendants announced in a press release that GTY Holdings' sponsors—GTY Investors—"elected

19  to bring together best-in-class companies to establish an integrated software solution in the highly

20  fragmented and underpenetrated public sector market."  (Dkt. No. 11-1 ¶ 71.)   In other words,

21  Plaintiff alleges that GTY Investors used Plaintiff's trade secrets to establish the software solution.

22          Defendants' insistence that because GTY Investors "serves a limited role as GTY

23  Holdings' 'sponsor' or 'promoter,' only providing certain limited support in connection with GTY

24  Holdings," it was not involved in any conduct underlying Plaintiff's claims.  (Dkt. No. 26 at 13-

25  14.)  Defendants further argue that Plaintiff "has failed to explain the factual basis for any claims

26  against GTY Investors, including the heightened factual details necessary to state a fraud claim."

27  (*Id.* at 14.)  Defendants are wrong to the extent they suggest that Plaintiff's complaint must pass

28  the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) to defeat

1    removal based on fraudulent joinder.  As previously discussed, in the context of determining

2    whether a defendant has been fraudulently joined, the complaint need not even state a plausible

3    claim for relief under Rule 12(b)(6).  *See Grancare*, 889 F.3d at 549-50.  Defendants' opposition

4    recognizes as much.  (*See* Dkt. No. 26 at 12 n.6 ("*Grancare* correctly states the legal principle that

5    the fraudulent joinder standard is not whether a plaintiff has failed to state a plausible claim for

6    relief under Ruel 12(b)(6), but rather whether there is 'any possibility' that a plaintiff could state a

7    claim against the defendant.").)  Here, the complaint demonstrates at least a *possibility* that

8    Plaintiff *could* state a claim against GTY Investors.

9          Defendants provide no affirmative evidence—in the form of declarations or evidence

10   outside of Plaintiff's complaint—that counsels a different result.  Defendants instead insist that

11   "pleading gaps" in the complaint as to GTY Investors demonstrate fraudulent joinder.  (*See id.* at

12   13-14.)  Pointing to deficiencies in the factual allegations in the complaint is appropriate under a

13   Rule 12(b)(6) standard; however, it is insufficient to carry Defendants' heavy burden of showing

14   that the claims against GTY Investors could not "*possibly* be cured by granting the plaintiff leave

15   to amend."  *See Grancare*, 889 F.3d at 550.

16         Further, the in-circuit district court cases cited by Defendants are distinguishable on their

17   facts and thus unpersuasive.  *See Tipton v. Zimmer, Inc.*, No. CV 15-04171-BRO(JCx), 2016 WL

18   3452744, at *5 n.4 (C.D. Cal. June 23, 2016), *aff'd*, 715 F. App'x 763 (9th Cir. 2018) (finding

19   non-diverse defendant fraudulently joined where defendant's "role in the alleged tortious conduct

20   [was] not supported by *any* factual allegations describing his role," and deposition testimony

21   "refute[d] the Complaint's only factual allegation pertaining to [the defendant]." ) (emphasis

22   added); *Salkin v. United Servs. Auto. Ass'n*, 767 F. Supp. 2d 1062, 1068-69 (C.D. Cal. 2011)

23   (finding fraudulent joinder where defendants demonstrated that "USAA and USAA Life are

24   separate entities that operate independently, and that USAA does not exert control over USAA

25   Life's actions," thus, "[u]nder California law, there is no possibility given the evidence presented

26   that [p]laintiffs [could] state a claim against USAA based on the actions of USAA Life.");

27   *Sandoval v. Bausch & Lomb, Inc.*, No. 08-cv-07373-FMC-CWx, 2008 WL 11340256, at *1 (C.D.

28   Cal. Dec. 30, 2008) (finding fraudulent joinder where non-diverse defendant in product liability

1    action submitted declaration showing that his duties as a store manager had no connection to the

2    selection of products sold, or "the development, distribution, sales, or marketing" of the product at

3    issue.); *Maffei v. Allstate California Ins. Co.*, 412 F. Supp. 2d 1049, 1052 (E.D. Cal. 2006)

4    (finding fraudulent joinder of defendant-corporation where defendants submitted declaration

5    attesting that the corporation was "nothing more than an empty corporate shell created in

6    anticipation of a business plan that was never carried out," and as such, it "ha[d] never conducted

7    any business of any kind"); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807-08 (N.D.

8    Cal. 1998) (finding fraudulent joinder of insurance agent-defendant because "under settled

9    California law[,] . . . an insurance agent acting within the course and scope of his employment

10   cannot be held liable for damages resulting from a negligent failure to insure.").

11        Defendants fail to meet their heavy burden of demonstrating fraudulent joinder as to GTY

12   Investors.  Because it is otherwise undisputed that GTY Investors shares citizenship with Plaintiff,

13   the Court lacks subject matter jurisdiction and the case must be remanded.  The Court need not

14   address the parties' arguments regarding Merger Sub.

15                                        **CONCLUSION**

16        The Court GRANTS Plaintiff's motion to remand because Defendants fail to show that

17   GTY Investors, which shares citizenship with Plaintiff, was fraudulently joined.  Accordingly, the

18   Court REMANDS this case to San Mateo County Superior Court.  The Court DENIES as moot

19   Defendants' motion to transfer and GTY Investors and Merger Sub's motion to dismiss.

20        This Order disposes of Docket Nos. 8, 22, and 24.

21        **IT IS SO ORDERED.**

22   Dated:    February 28, 2019

23

24                                                          _____
                                                           JACQUELINE SCOTT CORLEY
25                                                         United States Magistrate Judge

26

27

28

14