UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENGOV, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GTY TECHNOLOGY HOLDINGS INC., et al.,<br><br>    Defendants. | Case No. 18-cv-07198-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 40 |

Plaintiff OpenGov, Inc. ("OpenGov") sued Defendants GTY Technology Holdings Inc., GTY Govtech, Inc., GTY Technology Merger Sub, Inc. ("Merger Sub"), GTY Investors, LLC ("GTY Investors"), Harry L. You, and Stephen J. Rohleder (collectively, "Defendants") in Superior Court of the State of California in and for the County of San Mateo, alleging four causes of action related to alleged misuse of Plaintiff's proprietary information. (Dkt. No. 11-1, Ex. 1.)[1] Defendants timely removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] (Dkt. Nos. 1 & 11.) On February 28, 2019, the Court granted Plaintiff's motion to remand, (Dkt. No. 22), for lack of subject matter jurisdiction. (Dkt. No. 35.) Now before the Court is Plaintiff's motion for attorneys' fees. (Dkt. No. 40.) After careful consideration of the parties' briefing, the Court concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS in part Plaintiff's motion.

**DISCUSSION**

District courts have discretion following issuance of an order remanding a removed case to state court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c); *see also Martin v. Franklin Capital Corp.*,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 20 & 21.)

546 U.S. 132, 139 (2005) ("[A]n award of fees under § 1447(c) is left to the district court's discretion"). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin*, 546 U.S. at 140. Thus, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

Plaintiff seeks "an award of $148,663.78 in attorneys' fees, plus any additional fees incurred in connection with [the instant] motion." (Dkt. No. 40 at 4.) Defendants argue that they "reasonably removed this case on the basis of analogous fraudulent joinder case law and the relevant factual record," and in any event, Plaintiff "has not shown that it is entitled to an extraordinary award of nearly $150,000 in fees." (Dkt. No. 43 at 5, 13.) The Court addresses each argument in turn.

## I. Reasonableness of Removal

"Removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018) (internal quotation marks and citation omitted). Instead, "the degree of clarity in the relevant law at the time of removal is a relevant factor in determining whether a defendant's decision to remove was reasonable." *Id.*; *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066-67 (9th Cir. 2008) (citing with approval and applying the Seventh Circuit's reasonableness test of whether the relevant case law clearly foreclosed the arguments in support of removal). The relevant law at issue here is the fraudulent joinder standard, which *Grancare* clarified before Defendants' removal; specifically:

> There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdiction facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568,

2

> 573 (5th Cir. 2004)). Fraudulent joinder is established the second way if a defendant shows that an "individual[ ] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11 Cir. 2003) (per curiam)) (emphasis added). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Id.* (citations omitted).

889 F.3d at 548 (alterations in original). In clarifying the fraudulent joinder standard, the *Grancare* court directly addressed and rejected the argument "that the correct standard [in analyzing fraudulent joinder] is close to that of a Rule 12(b)(6) motion to dismiss." *Id.* at 549 (noting that "[a] claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."). The court found that the defendant's arguments regarding "deficiencies in the complaint" (i.e., "'lumping'" one defendant "with other defendants by alleging misconduct against all defendants collectively," and failure to sufficiently plead claims) went "to the sufficiency of the complaint, rather than to the possible viability of [the plaintiffs'] claims," and thus did "not establish fraudulent joinder." *Id.* at 552.

The Court accordingly noted in its February 28, 2019 order granting Plaintiff's motion to remand that "[t]he standard for determining fraudulent joinder is not equivalent to a Rule 12(b)(6) standard." (Dkt. No. 35 at 9 (citing *Grancare*, 889 F.3d at 549 ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.")).) Instead, as stated in *Grancare*, "a federal court must find that a defendant was properly joined and remand the case to state court if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants." (*Id.* (quoting *Grancare*, 889 F.3d at 549 (alteration in original) (internal quotation marks and citation omitted)).) Further:

> The "no possibility" standard is "similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction[,]" and "[t]he relative stringency of the standard accords with the presumption against removal jurisdiction, under which we 'strictly construe the removal statute,' and reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" [*Grancare*, 889 F.3d at 549-50]

3

> (quoting *Gaus*, 980 F.2d at 566). If a federal court determines that a deficiency in the complaint regarding allegations against a non-diverse defendant could "*possibly* be cured by granting the plaintiff leave to amend," it must remand the case to state court. *See id.* at 550 (emphasis added).

(Dkt. No. 35 at 9-10.)

The *Grancare* court issued its decision on April 26, 2018—over seven months before Defendants removed the action to this Court asserting that GTY Investors and Merger Sub were fraudulently joined and thus complete diversity of citizenship existed "between Plaintiff and the properly joined Defendants." (*See* Dkt. No. 1 at 4.) Thus, at the time of removal, the case law on the fraudulent joinder standard was settled in the Ninth Circuit.

Defendants' retort that the case upon which it relied in its original and amended notice of removal—*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)—"was valid law" at the time of removal, "and remains valid law today" (Dkt. No. 43 at 7), is correct but unhelpful to its cause. *Morris* also applied a "no possibility of prevailing" test: the court held that the non-diverse defendant was not fraudulently joined because it was "abundantly obvious" that the plaintiff "could not possibly prevail on her negligent misrepresentation claim." 236 F.3d at 1068; *see also Grancare*, 889 F.3d at 549 (noting that in *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009), the Ninth Circuit "emphasized . . . that a federal court must find that a defendant was properly joined and remand the case to state court if there is a '*possibility* that a state court would find that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants'"). *Morris* did not hold that a defendant is fraudulently joined merely because the plaintiff fails to state a claim.

Although Defendants' opposition recognized the "no possibility" standard in a footnote, (*see* Dkt. No. 26 at 12 n.6), and asserted that "[t]o establish that joinder is fraudulent, a defendant need only show "that there is no possibility that the plaintiff will be able to establish a cause of action . . . against [it]," (*see id.* at 10-11 (quoting *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998))), Defendants' substantive arguments did not apply that standard. Instead, their original and amended notice of removal was expressly based on the Rule 12(b)(6) failure to state a claim standard. (*See, e.g.,* Dkt. Nos. 1 & 11 at ¶ 27 ("[b]ecause Plaintiff

4

OpenGov has failed to plead facts supporting any plausible claims against Merger Sub and GTY Investors, *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court should find that the fraudulent joinder doctrine applies"). Defendants' opposition characterized the allegations against GTY Investors and Merger Sub as "conclusory," argued that the complaint contains "pleading gaps," and asserted that "OpenGov has failed to explain the factual basis for any claims against GTY Investors, including the heightened factual details necessary to state a fraud claim." (Dkt. No. 26 at 9, 14.) Defendants repeated the same arguments at oral argument, asserting that the complaint "is conclusory and only conclusory and its lumps together a list of defendants and treats them all alike." (Dkt. No. 40-7 at 12:2-4.) As the Court noted at the February 28, 2019 hearing, given that Defendants' removal applied an improper standard for fraudulent joinder, the lack of removal jurisdiction was "not even a close question." (*See* Dkt. No. 38 at 23:11-12.)

The district court cases Defendants cite do not persuade this Court otherwise. (*See* Dkt. No. 43 at 9-12 (citing *Tuttle v. Wells Fargo Bank, N.A.*, No. 18-CV-01544-JCS, 2018 WL 2412289, at *6 (N.D. Cal. May 29, 2018); *Lopez v. Allied Packing & Supply Inc.*, No. 16-cv-00371-JSC, 2016 WL 3068392 (N.D. Cal. June 1, 2016); *Bercraft v. Ethicon*, Inc., No. C00-1474CRB, 2000 WL 1721056 (N.D. Cal. Nov. 2, 2000)).)

The *Tuttle* court denied the request for attorneys' fees, noting that the reasonableness of the defendant's removal was a "close question[ ]," because of the defendant's reliance on a case finding "fraudulent joinder under analogous circumstances" (i.e., finding a foreclosure trustee fraudulently joined), and the complaint's "boilerplate allegations" suggesting "a real possibility" that the defendant in question was "in fact no more than a nominal party." *Id.* Here, Defendants can point to no case finding fraudulent joinder under analogous circumstances and the Court made no assertions—in the February 2019 Order or at the hearing—regarding "a real possibility" that GTY Investors is a mere nominal party.[3]

---

[3] Defendants assert that the reasonableness of their removal is supported by this Court's statement at oral argument that the GTY Defendants "may be 'correct that [GTY Investors is] not a proper defendant.'" (Dkt. No. 43 at 11 (quoting Dkt. No. 40-7 at 24).) However, the Court neither said nor implied that Defendants "may be correct" that GTY Investors is not a proper defendant. The Court instead stated: "So you may be back because, of course, you have a year from the filing of the Complaint *if you are correct* that they are not a proper defendant. You get them knocked out .

5

*Lopez* does not help Defendants either. There this Court denied the plaintiffs' motion for attorneys' fees after granting their motion to remand, concluding that the defendant's removal position was not unreasonable for two reasons. First, the defendant's "removal argument, while ultimately unpersuasive, was novel," and "no case within the Ninth Circuit" had addressed "the precise issue raised." 2016 WL 3068392, at *1 (noting that the defendant's arguments against application of the case the Court ultimately deemed controlling "were not frivolous" because that case's controlling nature was not "obvious"). Not so here. *Grancare* clearly sets forth the fraudulent joinder standard and in that case "the Ninth Circuit had considered and rejected the very arguments [Defendants] advanced." *Id.* Second, the amount of fees sought in *Lopez* undercut the plaintiff's argument that the defendant's removal position was without merit. *Id.* at *2 (concluding that the fee amount and hours expended "suggest[ed] that the issues presented were not objectively unreasonable, otherwise there would be no need for Plaintiffs to incur so much attorney time in briefing the issues."). Defendants argue that the same logic applies based on the fee request and hours expended here. While Plaintiff's extraordinary fee request suggests that the issue was complicated, as will be discussed below the fee request is unreasonable. In any event, the amount of fees sought does not persuade the Court in this case that Defendants' removal was reasonable.

*Bercraft*—another pre-*Grancare* case—is similarly unpersuasive. There the court denied the plaintiffs' request for attorneys' fees because the defendants' argument regarding the fraudulent joinder of non-diverse defendants was "not wholly without merit." 2000 WL 1721056, at *6. This Court cannot draw the same conclusion here.

In sum, the Court concludes that Defendants' removal was objectively unreasonable because they did not apply the governing law on fraudulent joinder, and instead, based their removal on arguments directly foreclosed by *Grancare*. Thus, Plaintiff is entitled to attorneys' fees under section 1447(c). *See Martin*, 546 U.S. at 141. The Court must next address whether Plaintiff's requested fee award is reasonable. It is not.

---

. . on demurrer. But I don't think it comes close to meeting the *Grancare* standard." (Dkt. No. 40-7 at 24:18-22 (emphasis added).)

**II. Amount Requested**

To calculate an award of attorneys' fees, district courts apply "the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and citation omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The party requesting fees also bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The number of hours should not exceed the number of hours reasonable competent counsel would bill for similar services. *Hensley*, 461 U.S. at 434. Courts may reduce the hours expended "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34).

The Ninth Circuit has identified several factors courts should consider in determining the reasonableness of the number of hours expended and the hourly rate charged, including: (1) the "experience, reputation, and ability of the attorney"; (2) "the outcome of the results of the proceedings"; (3) "the customary fees"; and (4) "the novelty or the difficulty of the question presented." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

As previously discussed, Plaintiff requests "an award of $148,663.78 in attorneys' fees, plus any additional fees incurred in connection with [the instant] motion." (Dkt. No. 40 at 4.) In support of the requested amount, Plaintiff's counsel submits a declaration attesting to the following fees "incurred as a result of [Defendants'] removal of this action":

| | |
|---|---|
| Motion to Remand: | $93,772.51 (127.375 hours) |
| Opposition to Motion to Transfer: | $26,302.50 (39.625 hours) |
| Opposition to Motion to Dismiss: | $15,059.38 (24.5 hours) |
| Instant Motion for Attorneys' Fees: | $13,529.39 (22.25 hours) |

(Dkt. No. 40-1 at ¶ 8.) Plaintiff's counsel further provides the billing rates of the attorneys and paralegals who worked on this case, as follows:

| | |
|---|---|
| John Keker (partner): | $1,500 per hour |
| Jeff Chanin (partner): | $1,075 per hour |
| Dan Jackson (partner): | $775 per hour |
| Nicholas Goldberg (partner): | $700 per hour |
| Ellison Wada (paralegal): | $290 per hour |
| Sarah Herbert (paralegal): | $250 per hour |

(*Id.* at ¶ 9.) Plaintiff's counsel submits a "billing summary spreadsheet" detailing the work performed by each of the above-named individuals, with the majority performed by Dan Jackson and Nicholas Goldberg. (*Id.* at ¶ 10; *see also* Dkt. No. 40-2, Ex. A at 2-5.)

Defendants argue that Plaintiff's fee request is unreasonable, citing 10 cases from this District dating from 2008 to 2019 in which the plaintiffs requested attorneys' fees ranging from $2,100 to $13,080. (*See* Dkt. Nos. 43-2 – 43-11, Exs. 1-10.) Defendants further argue that Plaintiff "include[s] two categories of fees that it simply cannot recover"—those incurred in opposing both GTY Defendants' motion to transfer and Merger Sub and GTY Investors' motion to dismiss. (Dkt. No. 43 at 16 (arguing that "courts in this Circuit have held that fees related to opposing motions to dismiss are not recoverable under . . . 28 U.S.C. § 1447(c), because they are only tangentially related to removal and would have been incurred if the litigation had remained in state court.").) The Court agrees that the total amount requested is unreasonable in light of the relatively minor complexity of the motion to remand. Further, awarding fees for the instant motion and Merger Sub and GTY Investors' motion to dismiss is unwarranted.

### A. Reasonableness of Hours Expended

First, it is unclear why Plaintiff's motion to remand required over 127 billable hours from

8

four highly experienced litigation partners.[4]  The motion itself consists of 14 substantive pages setting forth the same overarching argument—the claims against GTY Investors and Merger Sub were not "wholly insubstantial and frivolous," and thus, Defendants failed to meet the *Grancare* standard of demonstrating fraudulent joinder.  (*See* Dkt. No. 22.)  According to Plaintiff's billing summary, counsel billed over 59 hours of work in researching, drafting, and editing the initial motion.[5]  (Dkt. No. 40-2, Ex. A at 2-3.)  Counsel then billed over 41 hours on the reply, (*see* Dkt. No. 40-2, Ex. A at 3-4), which consists of 8 pages, (*see* Dkt. No. 32).  The remainder of time was spent preparing for, traveling to, and participating in the February 2019 hearing on all motions.

Generally, district courts should defer to the "lawyer's professional judgment as to how much [time] he or she was required to spend on the case." *Ryan*, 786 F.3d at 763 (internal quotation marks and citation omitted).  Here, however, Plaintiff provides no analogous caselaw where a similar number of hours were billed by similarly experienced attorneys and their staff in litigating a motion to remand, and the Court's own research reveals none.  On this record, the Court cannot conclude that 127 hours on the motion to remand constitutes time "reasonably expended," *see Hensley*, 461 U.S. at 434, given the minor complexity of the arguments set forth and the hours billed for the other motions at issue, (*see* Dkt. No. 40-1 at ¶ 8).

Mr. Jackson performed the majority of work conducting legal research, drafting, and editing the motion to remand and reply; his time entries for work on the motion and reply alone total 76.125 hours.  (Dkt. No. 40-2, Ex. A at 2-4.)  That amount of time is more than sufficient given the nature of the arguments presented and Mr. Jackson's extensive litigation experience, (*see* Dkt. No. 40-5, Ex. D).  The remaining hours expended in researching, drafting, and editing the motion and reply by Mr. Jackson and others were "excessive or otherwise unnecessary."  *See*

---

[4] Mr. Keker has nearly four decades of litigation experience, and is a name partner of Keker, Van Nest & Peters LLP.  (*See* Dkt. No. 40-3, Ex. B.)  Mr. Chanin is a litigator with nearly three decades of experience.  (*See* Dkt. No. 40-4, Ex. C.)  Mr. Jackson has nearly two decades of litigation experience.  (*See* Dkt. No. 40-5, Ex. D.)  Mr. Goldberg is a litigator with nearly a decade of experience.  (*See* Dkt. No. 40-6, Ex. E.)

[5] Plaintiff's billing summary includes "block-billed" entries—single time entries for multiple motions (i.e., "Attention to editing and finalizing opposition to motion to transfer, motion to remand, and related pleadings."), (*see* Dkt. No. 40-2, Ex. A).  Plaintiff appears to have included the full time for such entries into its 127.375 hour total for hours expended on the motion to remand.

*Chalmers*, 796 F.2d at 1210.

As for preparation for the February 2019 hearing on all motions, the billing summary includes block-billed entries for Mr. Jackson and Mr. Goldberg. (*See* Dkt. No. 40-2 at 4 ("Prepare for hearings on motion to remand, motion to dismiss, motion to transfer.").) Those block-billed entries constitute 23.125 hours. The Court reduces by two-thirds the hours expended for such entries to reflect only preparation for the motion to remand (7.70 hours). The summary also includes one entry specifically for the motion to remand. (*Id.* ("Confer with Goldberg in preparation for remand hearing.").) The Court includes that time (0.5 hours) in total. Similarly, the Court includes in total the hours expended for travel and oral argument (3.375 hours), because the parties argued only the motion to remand. In sum, 11.575 hours is reasonable for preparation, travel time, and oral argument.

The Court concludes that 87.70 hours were reasonably expended on the motion to remand. Because the Court is including only the hours billed by Mr. Goldberg (8.9 hours) and Mr. Jackson (78.8 hours), it addresses the reasonableness of only their rates, below.

### B. Reasonableness of Rates

Plaintiff's declaration in support of the instant motion asserts that this is a "complex commercial case," and "the rates of Keker, Van Nest & Peters are in line with those prevailing in the legal community for similar services by lawyers of reasonably comparable skill and expertise." (Dkt. No. 40-1 at ¶ 10.) The Court agrees that the rates charged by Mr. Goldberg and Mr. Jackson are reasonable, given their extensive litigation experience and the status and reputation of their firm. *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) (noting that "district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable.").

Mr. Goldberg is a partner at Keker, Van Nest & Peters practicing in the firm's Contract & Commercial, Intellectual Property, Professional Liability, Securities, and White Collar Criminal litigation groups. (Dkt. No. 40-6, Ex. E.) His billing rate in this case was $700 per hour. (Dkt. No. 40-1 at ¶ 9.) Mr. Goldberg holds a bachelor's degree from Brown University, and a J.D. from

U.C. Berkeley School of Law. (Dkt. No. 40-6, Ex. E.) He has nearly a decade of experience as a litigator. (*See id.*) Mr. Goldberg's rate is reasonable based on his experience and the average rates of law firm partners in the Bay Area.

Mr. Jackson is a partner at Keker, Van Nest & Peters practicing in the firm's Appellate, Consumer & Class Actions, Contract & Commercial, Intellectual Property, and Professional Liability litigation groups. (Dkt. No. 40-5, Ex. D.) His billing rate in this case was $775 per hour. (Dkt. No. 40-1 at ¶ 9.) Mr. Jackson holds bachelor's and master's degrees from the University of Southern California, as well as a Candidate of Philosophy degree from the University of California, San Diego. (Dkt. No. 40-5, Ex. D.) He received his J.D. from Yale Law School and has nearly two decades of litigation experience. (*See id.*) Mr. Jackson's rate is reasonable based on his experience and the rates of comparably skilled and experienced lawyers in the Bay Area.

In sum, the Court reduces the fees requested for the motion to remand by $26,472.51 and awards Plaintiff's $67,300 in fees on the motion. Although this amount is still high, it is reasonable given the nature of the legal representation chosen by Plaintiff and Defendants alike.

### C. Fees for Work on Other Motions

As previously discussed, the total amount of fees requested includes fees for work performed on other motions; specifically, Plaintiff's opposition to Merger Sub and GTY Investors' motion to dismiss and opposition to Defendants' motion to transfer, and Plaintiff's instant motion for attorneys' fees. Defendants argue that Plaintiff's request for such fees is improper under section 1447(c). The Court agrees that awarding Plaintiff attorneys' fees for work opposing the motion to dismiss is not warranted. Nor should Plaintiff receive fees for work on the instant motion for attorneys' fees. The Court disagrees, however, as to fees related to the motion to transfer.

The Ninth Circuit addressed this issue indirectly in *Baddie v. Berkeley Farms, Inc.*, stating, in pertinent part:

> The language of section 1447(c) refers to the payment of expenses "incurred as a result of the removal." When defendants remove a case improperly, for example, they cause the plaintiffs to incur the expense of seeking a remand. That expense is a direct result of the removal, and section 1447(c) permits the plaintiffs to recoup that expense. In

11

United States District Court
Northern District of California

|   |   |
|---|---|
| 1 | contrast, other fees and costs incurred in federal court after a removal may be related only tenuously to the removal, as when they replace similar fees and costs that would have been incurred in state court if the litigation had proceeded there. Such fees and costs cannot be considered "incurred as a result of the removal." |

64 F.3d 487, 490 (9th Cir. 1995) (quoting 28 U.S.C. § 1447(c)).

Here, Plaintiff's fees in opposing Merger Sub and GTY Investors' motion to dismiss constitute "fees and costs that would have been incurred in state court if the litigation had proceeded there." *See id.* Indeed, Defendants' opposition to the instant motion asserts that "[t]he GTY Defendants intend to file a demurrer in California state court as to all claims against GTY Investors and Merger Sub." (Dkt. No. 43 at 8 n.4.) Plaintiff's argument that the "demurrer will be based on state law principles," and thus, the fees incurred will not be similar to those incurred in opposition to the motion to dismiss, is unpersuasive. (*See* Dkt. No. 44 at 8 (citing *Husko v. Geary Elec., Inc.*, 316 F. Supp. 2d 664, 674 (N.D. Ill. 2004)).)

As *Baddie* noted, the fees and costs sought need not be *identical*, but only *similar* to those "that would have been incurred in state court if the litigation had proceeded there." 64 F.3d at 490. Defendants' anticipated demurrer in state court will likely set forth similar arguments in seeking to dismiss all claims against Merger Sub and GTY Investors as those set forth here. The state court will obviously apply the California state law pleading standard as opposed to the federal standard, but the gravamen of Defendants' argument will be the same: the complaint against Merger Sub and GTY Investors is deficient as a matter of law because it fails to state claims against those defendants. Further the legal standard on demurrer is similar to the standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Compare Blank v. Kirwan*, 39 Cal. 3d 311, 318 (1985) ("In reviewing the sufficiency of a complaint against a general demurrer, . . . [w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.") (internal quotation marks and citation omitted), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that on motion to dismiss under Rule 12(b)(6) courts must accept all factual allegations as true but mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient). Thus, the fees incurred by Plaintiff in opposing the motion to dismiss here merely "replace[d]

*similar* fees and costs that would have been incurred in state court if the litigation had proceeded there." *See Baddie*, 64 F.3d at 490 (emphasis added). As such they were not "incurred as a result of the removal." *See id.* (quoting 28 U.S.C. 1447(c)).

The $13,529.39 Plaintiff incurred for the instant motion for attorneys' fees is also unwarranted. Instead of "reserv[ing] the right to [separately] move for its attorneys' fees after the Court decide[d] th[e] motion" to remand, (*see* Dkt. No. 22 at 6 n.1), Plaintiff could have added a request for attorneys' fees to its motion to remand. Indeed, Plaintiff had ample room in its motion to make such a request because the motion to remand contained only 14 pages of argument and the instant motion contains 9 pages of argument. *See* Civ. L.R. 7-2 (providing that motions cannot exceed 25 pages in length). Further, the 87.80 hours expended on the motion to remand could have accounted for the time spent on the instant motion.

The Court is satisfied, however, that the fees arising out of Defendants' motion to transfer were incurred as a result of the removal. Defendants moved to transfer to the Southern District of New York, or in the alternative, to stay proceedings, based on the first-filed action in that district brought by GTY Holdings, New GTY, Mr. Rohleder, and Mr. You against OpenGov. (*See* Dkt. No. 8.) Defendants' motion argued that transfer was warranted under the federal first-to-file rule, or alternatively, under 28 U.S.C. § 1404(a). (*Id.*) The first-to-file rule and 28 U.S.C. § 1404(a) apply only to transfers between federal district courts. Thus, based on the purely federal basis for transfer, Plaintiff's fees in opposing the motion to transfer were not tenuously related to the removal, but were instead incurred as a result of removal because the motion could not have been brought in state court.[6] *See Baddie*, 64 F.3d at 490 (noting that fees are unavailable under section 1447(c) "when they replace similar fees and costs that would have been incurred in state court if the litigation had proceeded there.").

The hours expended (39.625)[7] and rates charged in opposition to the motion to transfer are

---

[6] It bears noting that the parties stipulated to a briefing schedule for Defendants' motion to transfer, Plaintiff's motion to remand, and Merger Sub and GTY Investors' motion to dismiss providing that briefing on all motions would proceed concurrently and with overlapping deadlines, and all motions would be heard on the same date—February 28, 2019. (*See* Dkt. No. 18.)
[7] Plaintiff's billing summary includes entries specific to Plaintiff's opposition to the motion to transfer, in the amount of 36.625 hours. (*See* Dkt. No. 40-2, Ex. A at 2-3.) Mr. Goldberg billed

13

reasonable. Plaintiff's declaration does not specify how it determined the amount requested ($26,302.50), but that figure is below the amount of fees corresponding to the actual hours expended on the opposition. The billing summary indicates that Mr. Goldberg performed the majority of the work on the opposition (33.125 hours on the opposition only, with an additional 6.75 block-billed hours that included work on the motion to remand). (*See* Dkt. No. 40-2, Ex. A at 2-3.) After reducing the block-billed entries by one-half, Mr. Goldberg is responsible for 36.5 of the hours expended on the opposition and $25,550 of the requested fees at his billing rate of $700 per hour. The billing summary contains block-billed entries for work on the opposition completed by Mr. Jackson, in the amount of eight hours. After reducing those block-billed entries by one-half, Mr. Jackson is responsible for 4 hours expended on the opposition and $3,100 in fees at his billing rate of $775 per hour. The combined fees of Mr. Goldberg and Mr. Jackson ($28,600) total more than the amount requested. Further, the fees requested also apparently do not reflect work performed by Mr. Keker, Mr. Chanin, or the firm's paralegal, Mr. Wanda, or any work done in preparation for the February 2019 hearing. (*Id.* at 2-4.)

Defendants argue that in requesting fees incurred in opposition to the motion to transfer, Plaintiff is impermissibly and "indirectly seeking fees related to its litigation of the first-filed action" in the Southern District of New York because "[m]any of the arguments OpenGov advanced in [its] opposition to the motion to transfer in this case also were used in OpenGov's papers moving to dismiss" the action in that case. (Dkt. No. 43 at 17.) Defendants assert that Plaintiff is thus "prohibited from recovering fees related to the New York federal action under 28 U.S.C. § 1447(c), which permits recovery of only costs related to remanding an action that was originally filed in state court and then removed." (*Id.*) Defendants cite no authority for this argument, and the Court fails to see how a party's use of similar arguments against the same opposing party in two separately filed cases based on the same underlying facts runs afoul of section 1447(c).

---

33.125 of those hours, with the remainder billed by Mr. Wanda. (*Id.*) The billing summary also includes block-billed entries from Mr. Goldberg and Mr. Jackson that reference work done on the motion to transfer, in the amount of 14.75 hours, not including preparation for oral argument or review of Defendants' removal papers by Mr. Keker and Mr. Chanin. (*See id.* at 2-4.)

***

In sum, the Court concludes that an award of $93,602.50 in fees is appropriate. This amount reflects a reasonable amount of time on a motion to remand that set forth one substantive argument of relatively minor complexity, and reflects a reasonable rate for work performed by law firm partners Mr. Goldberg and Mr. Jackson. (*See* Dkt. No. 40 at ¶¶ 9-10.) This amount also includes the reasonable hours expended and rates charged in connection with Plaintiff's opposition to Defendants' motion to transfer, which was "incurred as a result of the removal." *See* 28 U.S.C. § 1447(c).[8]

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part Plaintiff's motion for attorneys' fees. Defendants are ordered to pay Plaintiff fees and costs in the total amount of $93,602.50.

This Order disposes of Docket No. 40.

**IT IS SO ORDERED.**

Dated: May 7, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[8] Defendants also argue in a footnote that Plaintiff's "moving papers are carefully drafted to avoid stating that OpenGov actually was billed for and paid the fees sought in this motion." (Dkt. No. 43 at 17 n.11.) Defendants, however, do not cite any authority that would make such facts material to resolution of the fees issue. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party ***reasonably expended*** on the litigation by a reasonable hourly rate.") (emphasis added); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("The fee applicant bears the burden of documenting ***the appropriate hours expended*** in the litigation and must submit evidence in support of those hours worked.") (emphasis added); *see also In re Washington Pub. Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The party petitioning for attorney' fees bears the burden of submitting detailed time records justifying ***the hours claimed to have been expended***.") (emphasis added) (internal quotation marks and citation omitted).